JUDGE DAVID GUADERRAMA

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

FILED

2023 APR 10  AM 10: 26

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

| | |
|---|---|
| YAZMIN GONZALEZ, | § |
| | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| KELLER POSTMAN LLC, an Illinois limited | § |
| Liability company | § |
| | § |
| Defendant. | § |
| | § |

EP23CV0145

## COMPLAINT

Pro Se Plaintiff Yazmin Gonzalez files this Complaint against Defendant Keller Postman LLC for violations of (1) the federal Telephone Consumer Protection Act ("TCPA") and its regulations and (2) the Texas Business and Commerce Code ("TBCC") law governing telephone solicitation, alleging as follows:

### INTRODUCTION

1.      Beginning in February 2023, Plaintiff began to receive a barrage of illegal telemarketing calls made on behalf of Defendant Keller Postman LLC ("Keller") by an unknown anonymous telemarketer soliciting Camp Lejeune legal representation.

2.      Plaintiff seeks redress under the TCPA and TBCC, demanding that the calls stop.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Count I under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See*

1

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

4.      The Court has supplemental jurisdiction over Count II under 28 U.S.C § 1367.

5.      This Court has personal jurisdiction over Keller because Defendant purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant's purposeful contacts with Texas and the litigation:

      a) Defendant targets Texas when marketing small business loans and regularly conducts business in this District, including telephone solicitation.

      b) Its agent John Doe Telemarketer, called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Keller's legal services.

      c) These calls to Texas Plaintiff injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

      d) Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES AND OTHER ENTITIES

6.      Plaintiff YAZMIN GONZALEZ is a natural person domiciled in Texas who received the incessant and intrusive calls made on behalf of Defendant to market small business loans via a merchant cash advance.

7.      Defendant KELLER POSTMAN LLC ("Keller") is a limited liability corporate law firm organized and existing under the laws of Illinois and can be served via registered agent Zina Bash at 501 Congress Avenue Suite 150, Austin, TX 74701. Defendant Keller Postman's place of business is 150 N Riverside Plz Ste 150, Chicago, IL 60606.

8.      Non-named Party JOHN DOE is an unknown anonymous telemarketer that made phone calls on behalf of and at the direction of Keller in exchange for financial considerations.

## FACTUAL ALLEGATIONS

9.      The TCPA was enacted to protect consumers' privacy interests by prohibiting unwanted, repetitive, and invasive telephone solicitations.

10.     Plaintiff successfully registered her phone number ending in 1859 on the National Do-Not-Call Registry ("DNC") in March 2022.

11.     Plaintiff successfully registered her phone number ending in 2376 on the National Do-Not-Call Registry ("DNC") in February 2022.

12.     Keller is a law firm licensed that markets itself as "Leading efforts to get justice for water contamination victims at Camp Lejeune."

13.     Keller hired anonymous John Doe telemarketer(s) to place telephone solicitation phone calls because Keller is barred by ethics from directly placing unsolicited phone calls on their own behalf.

14.     On March 31, 2023, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas telephone solicitation registration for Defendant Keller.

15.     Plaintiff is the subscriber to a cellular telephone service for this phone number, uses the phone for residential purposes, and does not use the telephone for any business purposes.

16.     On or about February 21, 2023, Plaintiff began receiving such calls from Defendant to her El Paso-area cellular telephone number 915-XXX-2376.

17.     On or about February 17, 2023, Plaintiff began receiving such calls from Defendant to her El Paso-area cellular telephone number 915-XXX-1859.

18.     Plaintiff was so aggravated with the phone calls she asked a coworker with a healthcare background to obtain the identity of the law firm making the unsolicited phone calls.

### Phone Calls to Phone Number Ending in 1859

19.     Call#1. On February 17, 2023, Plaintiff received a phone call that displayed 915-621-9455 on the caller identification.  Plaintiff answered the phone and was solicited for Camp Lejeune legal representation.  Plaintiff disconnected the call.

20.     Call#2. On February 17, 2023, Plaintiff received a phone call that displayed 301-936-1029 on the caller identification.  Plaintiff answered the phone and was solicited for Camp Lejeune legal representation.  Plaintiff disconnected the call.

21.     Calls #3-4.  Plaintiff received two additional calls that displayed 301-936-1029 on the call identification on February 17, 2023, and February 25, 2023.

22.     Call #5.  On February 26, 2023, Plaintiff received a phone call that displayed 915-821-1265 on the caller identification.  Plaintiff was solicited for Camp Lejeune legal representation.  Plaintiff discontinued the call.

23.     Call#6.  On February 26, 2023, Plaintiff received a phone call that displayed 915-852-26589 on the caller identification.  Plaintiff was solicited for Camp Lejeune legal representation.  Plaintiff discontinued the call.

24.     Call #7.  On March 16, 2023, Plaintiff received a phone call that displayed 915-821-1984 on the caller identification.  Plaintiff answered the phone and yet again was solicited for Camp Lejeune legal representation by an anonymous telemarketer.  Plaintiff was aggravated from all the calls and decided to continue the process to determine who was constantly calling Plaintiff.  Plaintiff went through the process.

25.     Plaintiff was transferred by the anonymous telemarketer in Call#7 from paragraph 24 to "Colette" who sent Plaintiff a contract from Defendant Keller for Camp Lejeune legal representation.

26.     Call #8.  On March 16, 2023, Plaintiff received a phone call from phone number 770-583-7714.  The telemarketer began to again solicit Plaintiff for Camp Lejeune legal solicitation.  This was a cold-call solicitation not connected to the previous call in which Plaintiff was sent a contract.  The telemarketer asked Plaintiff all of the qualifying questions and then transferred Plaintiff to Jake.  During the call, the call Jake realized Plaintiff already had already been a contract and asked that Plaintiff sign the contract that had already been sent.

27.     Call #9.  On March 16, 2023, Plaintiff received a phone call that displayed 702-852-6587 on the caller identification.  Plaintiff answered the phone and was solicited cold-call solicited for Camp Lejeune legal representation.

28.     Call #10.  On March 16, 2023, Plaintiff received a phone call that displayed 915-821-1637 on the caller identification.  Plaintiff answered the phone and was solicited cold-call solicited for Camp Lejeune legal representation.

29.     The agent behind the call in Paragraph 28 asked Plaintiff qualifying questions and then transferred her to another agent. The agent behind the call identified herself as "Colette from National Intake Center for Camp Lejeune toxic water legal action."

30.     Plaintiff continued with the call and received an email from certifier@vinesign.com. containing the retainer for Defendant Keller Postman's legal services. Plaintiff declined to sign the contract.

**Calls to Phone Number Ending in 2376**

31.    Call #1.  On February 21, 2023, Plaintiff received a phone call that displayed 516-853-2780 on the caller identification.  Plaintiff answered the phone and was solicited for Camp Lejeune legal representation.  Plaintiff disconnected the call.

32.    Call #2.  On February 21, 2023, Plaintiff received a phone call that displayed 646-699-3891 on the caller identification.  Plaintiff answered the phone and was solicited for Camp Lejeune legal representation.  Plaintiff disconnected the call.

33.    Call #3.  On February 22, 2023, Plaintiff received a phone call that again displayed 646-699-3891 on the caller identification.  Plaintiff recognized the phone number and knew it was for Camp Lejeune.  Plaintiff's coworker, who has a medical background, answered the phone so that Plaintiff could determine who was behind the constant Camp Lejeune phone calls.  The qualifying questions were answered and Plaintiff was live transferred Plaintiff to another agent.  The agent sent an email from andrea.mangal@1888goanswer.com. containing the retainer for Defendant's legal services.

34.    Call #8.  On February 23, 2023, Plaintiff received a phone call that displayed 325-308-0612.  This was a direct call from "Chris" from Defendant Keller.

35.    Call #10.  On February 23, 2023, Plaintiff received a phone call that displayed 325-308-0612 on the caller identification.  This call came from the same "Jake" who also called Plaintiff on her phone number ending in 1859.  Jake sent Plaintiff a contract from Defendant Keller to enroll Plaintiff in their Camp Lejeune legal services.

36.    DNC request # 1.  Call #11.  On February 23, 2023, Plaintiff received a phone call that displayed 702-664-1487 on the caller identification.  "Jake from Keller Postman" made the phone call.  Plaintiff informed Jake she was not interested and asked Jake to not call again.

37.     DNC request #2.  Call # 14.  On February 24, 2024, Plaintiff received a phone call displaying 516-853-2480 on the caller identification.  Plaintiff was solicited for Camp Lejeune representation.  Plaintiff asked the telemarketer to not call again.

38.     DNC request #3.  Call #18.  On February 27, 2023, Plaintiff received a text message from phone number 516-730-0242 from Defendant asking Plaintiff to sign the documents.  Plaintiff replied back with a Do Not Call request.

39.     DNC request #4.  Call #19.  On February 27, 2023, Plaintiff received a text message from phone number 516-856-9015 from Defendant asking Plaintiff to sign the documents.  Plaintiff replied back with a Do Not Call request.

40.     DNC request #5.  Call #22.  On March 6, 2023, at 9:34 AM, Plaintiff received a phone call that displayed 646-699-3891 on the caller identification.  Plaintiff answered the phone directly from Defendant Keller.  Plaintiff informed Defendant she was not interested and to not call again.

41.     DNC request #6.  Call #22.  On March 6, 2023, at 9:52 AM, Plaintiff received a phone call that displayed 646-699-3891 on the caller identification.  Plaintiff answered the phone directly from Defendant Keller.  Plaintiff informed Defendant she was not interested and to not call again.

42.     Defendant used a series of phone numbers to call Plaintiff.  Many of the phone numbers used 915 area codes in order to make it seem as though the call was local.  This spoofed caller identification is a purposeful violation of the Truth in Caller ID Act of 2009.

43.     Plaintiff received at least 33 telephone calls on behalf or, and by, Defendant Keller from a number of various phone numbers.  Table A below lists the phone calls received by Plaintiff.

44.     TABLE A below displays calls for phone number ending in 2376 made to Plaintiff

TABLE A:

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1. | 02/21/2023 | 9:32 AM | 516-853-2780 | Telemarketer soliciting Camp Lejeune |
| 2. | 02/22/2023 | 12:55 PM | 646-699-3891 | Telemarketer soliciting Camp Lejeune |
| 3. | 02/22/2023 | 1:21 PM | 646-699-3891 | Agent sent contract |
| 4. | 02/23/2023 | 7:20 AM | 516-853-2780 | Missed call |
| 5. | 02/23/2023 | 9:43 AM | 646-699-3891 | Missed call |
| 6. | 02/23/2023 | 9:55 AM | 516-853-2780 | Telemarketer soliciting Camp Lejeune |
| 7. | 02/23/2023 | 11:03 AM | 516-853-2780 | Telemarketer soliciting Camp Lejeune |
| 8. | 02/23/2023 | 11:13 AM | 325-308-0612 | Chris from Intake Center |
| 9. | 02/23/2023 | 11:20 AM | 516-853-2780 | Telemarketer soliciting Camp Lejeune |
| 10. | 02/23/2023 | 11:23 AM | 325-308-0612 | Chris from Intake Center and Jake from Keller |
| 11. | 02/23/2023 | 12:51 PM | 702-664-1487 | Jake from Keller |
| 12. | 02/23/2023 | 1:44 PM | 516-853-2480 | Missed call |
| 13. | 02/24/2023 | 12:51 PM | 516-853-2480 | Missed call |
| 14. | 02/24/2023 | 4:03 PM | 516-853-2480 | DNC – not interested |
| 15. | 02/25/2023 | 8:36 AM | 646-699-3891 | Missed call |
| 16. | 02/26/2023 | 1:11 PM | 646-699-3891 | Telemarketer soliciting Camp Lejeune |
| 17. | 02/27/2023 | 8:05 AM | 646-699-3891 | Telemarketer soliciting Camp Lejeune |
| 18. | 02/27/2023 | 9:44 AM | 516-730-0242 | DNC request |
| 19. | 02/27/2023 | 10:45 AM | 516-856-9015 | DNC Request |
| 20. | 02/28/2023 | 8:25 AM | 646-699-3891 | Missed call |
| 21. | 03/01/2023 | 9:34 AM | 646-699-3891 | Direct call from Keller Postman |

| 22. | 03/06/2023 | 9:52 AM | 646-699-3891 | Not interested |
| 23. | 03/09/2023 | 12:07 PM | 646-699-3891 | Not interested |

45.    Table B below displays calls for phone number ending in 1859 to Plaintiff.

TABLE B

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 02/17/2023 | 8:37 AM | 915-621-9455 | Telemarketer soliciting Camp Lejeune |
| 2. | 02/17/2023 | 2:49 PM | 301-936-1029 | Telemarketer soliciting Camp Lejeune |
| 3. | 02/17/2023 | 2:52 PM | 301-936-1029 | Telemarketer soliciting Camp Lejeune |
| 4. | 02/25/2023 | 9:48 AM | 301-936-1029 | Telemarketer soliciting Camp Lejeune |
| 5. | 02/26/2023 | 2:10 PM | 915-821-1265 | Telemarketer soliciting Camp Lejeune |
| 6. | 02/27/2023 | 1:04 PM | 915-852-2659 | Telemarketer soliciting Camp Lejeune |
| 7. | 03/16/2023 | 11:26 AM | 915-821-1984 | Telemarketer soliciting Camp Lejeune. Transferred to Colette who sent contract. |
| 8. | 03/16/2023 | 1:06 AM | 770-583-7714 | Telemarketer soliciting Camp Lejeune. Transferred to Jake who asked Plaintiff to sign the contract. |
| 9. | 03/16/2023 | 4:22 PM | 702-852-6587 | Telemarketer soliciting Camp Lejeune |
| 10 | 03/16/2023 | 4:22 PM | 702-852-6587 | Telemarketer soliciting Camp Lejeune |

46.    Plaintiff did not have an established business relationship with Defendant, nor did Plaintiff consent to any of these calls.

47.    Plaintiff did not provide her phone number to Defendant at any point.

48.    On information and belief, Keller used an automated telephone dialing system, as defined by 47 U.S.C. § 227(a)(1), to make calls.

49.    Although is not bringing claims for 227(b), Plaintiff infers an ATDS was used because:

a)  Several calls came in rapid succession, including four calls within three minutes on two different occasions;

b)  Plaintiff heard a long pause and dead airtime upon answering calls but before being connected to a live agent; and

c)  Random or sequential generation explains how Defendant obtained and dialed Plaintiff's number, considering Plaintiff did not give it to Defendant or otherwise consent to the calls.

50.    Defendant's placement of nonemergency telephone calls to Plaintiff's cellular telephone using an ATDS without Plaintiff's prior express consent violated 47 U.S.C § 227(b) and 47 C.F.R. § 64.1200(a).

51.    Defendant's placement of multiple calls within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC Registry since March 2022, violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

52.    Defendant's violations described in paragraphs 50-51 were knowing and willful because KELLER had "reason to know, or should have known, that [its] conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001).  Bad faith is not required.

53.    KELLER knew or should have known that its conduct would violate the TCPA and its regulations because KELLER operates in a highly regulated telephone solicitation industry.

54.    KELLER knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violate the TCPA and its regulations.

**VICARIOUS LIABILITY OF KELLER FOR JOHN DOE'S TCPA VIOLATIONS**

55.     Keller is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as John Doe.  In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

56.     Keller markets legal representation through direct telephone solicitation by its hired John Doe telemarketers, who act on its behalf.  John Doe transfers live, hot leads to Keller and Keller accepts the leads.  John Doe was Keller's agent when it made the prohibited calls on behalf of, and with the actual authority from, John Doe pursuant to a contract that governs John Doe's telemarketing for Keller.

57.     Keller directs, controls, authorizes, and pays John Doe to generate live-transfer leads for Defendant's legal services through telephone solicitation.  Moreover, it requires, authorizes, or at least permits John Doe telemarketers to solicit explicitly for Camp Lejeune representation.

58.     Keller sets the criteria for qualifying leads, which John Doe must follow, and John Doe live-transfers leads qualified on those criteria exclusively to Keller.  Plaintiff is unaware of the qualifying thresholds, but the salient question is whether the potential client was stationed at Camp Lejeune, when they were stationed at Camp Lejeune, and whether there was some type of cancer or physical impairment that manifested as a result of the Camp Lejeune stay.

59.     On information and belief, Keller writes or at least approves the call script John Doe telemarketers use when qualifying leads for Keller.

60.     John Doe telemarketers are Keller's associates and do nothing to disturb the impression that John Doe telemarketers work for, and speak and act on behalf of, Keller.

61.     From John Doe telemarketer's initial call through Defendant Keller's acceptance of a completed representation application, the telemarketing of Keller's legal representation

11

constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Keller, the principal, with John Doe acting as Keller's agent.

62.     John Doe, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Keller's criteria, and then live-transferred Plaintiff to Keller's advisor to continue marketing legal representation.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES TO PLAINTIFF

63.     Plaintiff has been denied the use of her phone, enjoyment of his phone, and had the functionality of her phone decreased because of unnecessary charging, erosion of phone memory, and had her privacy invaded by the harassing telemarketing calls.

64.     Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

65.     Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendant.

66.     Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to Plaintiff

### COUNT I – DNC Violations
### Violation of the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)

67.     Plaintiff incorporates by reference each and every paragraph of this complaint as if fully set forth herein.

68.     The TCPA prohibits telephone solicitation of residential telephone subscribers whose numbers are registered on the National Do-Not-Call Registry, 47 U.S.C. § 227(c)(5).

69.     Even though Plaintiff's number has been registered on the National DNC Registry since March 2022, KELLER made unsolicited telephone solicitations to Plaintiff's residential telephone line, without Plaintiff's consent, and thereby violated 47 U.S.C § 227(c) and 47 C.F.R. § 64.1200(c) (the "DNC Violations").

70.     Plaintiff suffered the following injuries from each and every phone call:  invasion of privacy; intrusion on Plaintiff's right of seclusion; occupation of Plaintiff's telephone line by unwelcome calls, rendering the phone unavailable for legitimate calls; inconvenience; loss of usefulness of Plaintiff's phone; unnecessary expenditure of Plaintiff's phone's battery power; degradation of the battery; and trespass to Plaintiff's chattel, namely her cellular telephone.

71.     Under § 227(c)(5), Plaintiff is entitled to receive up to $500 in damages for each violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).  Because the violations were knowing and willful, *see* Paragraphs 50-51, the Court may award up to $1500 per violation.

72.     Accordingly, Plaintiff seeks and order under Section 227(c)(5) awarding $1500 for each DNC Violation.

## COUNT II
### Violation of Tex. Bus. Org & Com. Code § 302.101

73.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

74.     In addition to the harm of illegal telephone solicitations, Texas law recognizes the difficulty of holding businesses that make them accountable.

75.     To address that problem, Texas law requires "sellers" engaged in telemarketing to register with the state and provide the public the information necessary to hold a seller accountable:  the seller's legal name, any assumed names, any organizational documents, the address for the principal place of business, each phone number used in telemarketing, names of

officers and directors, and the name and address of the agent for service of process.  Tex. Bus. & Com. Code § 302.001. *et. seq.*

76.     The registration requirements reflect an important public policy of Texas:  to "protect persons against false, misleading, or deceptive trade practices in the telephone solicitation business." *Id.* § 302.003.  The law must be "liberally construed and applied to promote [that] purpose." *Id.*  Moreover, sellers must post financial security to ensure their compliance, and an "attempted waiver of a provision of this chapter is void." *Id.* §§ 302.004, 302.107.

77.     Chapter 302 defines a "seller" as a "person who makes a telephone solicitation on the person's own behalf." Id. § 302.001(5),  A "telephone solicitation" is "a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id.* § 302.001(7). "Item," in turn, means "property or a service." *Id.* § 302.001(1).  Money obtained through a loan is "property." And a quick close to deliver funds to small businesses within days is a service." *Id.* § 302.001(1).

78.     KELLER is a "seller" because it makes telephone solicitations on its own behalf through salespersons, including both (a) those it "employ[s]" – such as "Steve," "John," "Matt," "Shaun," and "AJ," and those it 'authorize[s] – such as third party telemarketers. Id. § 302.001(4)-(5). The "items" it induces purchasers to receive are loans and a rapid close.  And the called parties are "purchasers" because they are "solicited to become…obligated for [the loans].'  Id. § 302.001(3).

79.     KELLER engages in "telephone solicitation" because they initiate telephone calls to induce small businesses to take loans through KELLER's quick closings for small businesses. Id. § 302.001(1), (3), (7).

14

80.     Because "a person makes a telephone solicitation if the person effects at attempts to effect a telephone solicitation," telephone calls initiated by "Steve," "John," "Matt," "Shaun," and "AJ" are attributable both to them individually and to KELLER. *See Id.* § 302 (emphasis added).

81.     Texas law requires those whose products or services are offered through telephone solicitation from or to a location located in Texas to provide information about their telemarketing activities and obtain a registration certificate from the State. Tex. Bus. & Com. Code § 302.101. The purpose of the requirement is to "protect persons against false, misleading, or deceptive practices in the telephone solicitation business." *Id.* at 302.003. KELLER effected the solicitations because it brought about and made them happen by employing or authorizing these salespersons to make the telephone solicitations and paying them to do so. *See* Effect, Black's Law Dictionary (11th ed. 2019) ("To bring about; to make happen.").

82.     Because the telephone solicitations were made to Plaintiff, a "purchaser located in this state" of Texas, KELLER was obligated to comply with the registration and related requirements of Texas Business & Commerce Code § 302.001, *et seq.*

83.     Defendant failed to comply, committing numerous independent violations of Texas law, including at least the following:

      a)   Failure to obtain a certificate of registration for the business locations(s) from which each of the telephone solicitations was made;

      b)   Failure to post the registration certificate in a conspicuous place at each such location;

      c)   Failure to post in close proximity to the registration certificate the name of each individual in charge of the location;

d) Failure to file an addenda providing the required registration information for each salesperson;

e) Failure to make available at each location a copy of the entire registration statement and any addenda for inspection by a purchaser or by a representative of a government agency; and

f) Failure to post a $10,000 bond, letter of credit, or certificate of deposit to secure Defendant's compliance with Chapter 302.

g) Failure to appoint Texas' Secretary of State agent for service of process.

h) Failure to provide the complete street address of both (i) the location from which each solicitation was made and (ii) Defendant's principal location.

84.     Each solicitation is a separate violation for which KELLER is subject to a penalty up to $5,000. *Id.* § 302.101, 302.302(a).

85.     Defendant's violations of Chapter 302 harmed Plaintiff because she had to spend hours to track down information that should have been publicly available.  To this day, Plaintiff does not have sufficient information about KELLER, the locations from which the calls were made, and the persons responsible for them.

86.     Plaintiff seeks to recover from Defendant "a civil penalty of not more than $5,000 *for each violation*."

87.     Plaintiff is further "entitled to recover all reasonable costs prosecuting this action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA § 227(b) intentional violations jointly and severally against the corporation for 33 calls;

E. An award of $1500 per call in statutory damages arising from the TCPA § 227(c) intentional violations jointly and severally against the corporation for 33 calls;

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 for 31 calls;

G. An award to Ms. Gonzalez of damages, as allowed by law under the TCPA;

H. An award to Ms. Gonzalez of interest, costs and attorneys' fees, as allowed by law and equity;

I. Such further relief as the Court deems necessary, just, and proper.


Dated:  April 6, 2023,                                      Respectfully submitted,

                                                            Yazmin Gonzalez
                                                            Plaintiff, Pro Se
                                                            14205 Charles Pollock
                                                            El Paso, TX 79938
                                                            915-820-1859

## I.       Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: April 6, 2023,

_____

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859